UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELEXCO LAND SERVICES, INC.,

                           Plaintiff,

v.

DAVID HENNIG and
INLAND GEOSERVICES LLC,

                           Defendants.
_____

**REPORT AND RECOMMENDATION**

11-CV-00214(A)(M)

## INTRODUCTION

Defendant David Hennig ("Hennig") and plaintiff Elexco Land Services, Inc. ("Elexco") have each moved for partial summary judgment concerning the enforceability of the non-compete and liquidated damages clauses of defendant Hennig's Employment Agreement ("Agreement") with Elexco [41, 43].[1]  These motions, being dispositive, have been referred to me by Hon. Richard J. Arcara for a Report and Recommendation [15]. Oral argument was held on December 5, 2011 [59].

For the following reasons, I recommend that Hennig's motion for partial summary judgment [41] be granted to the extent it seeks to declare the non-compete clause of the Agreement to be unenforceable, but that it otherwise be denied; and I further recommend that Elexco's cross-motion for partial summary judgment [43] be denied.

---

[1]     Bracketed references are to the CM/ECF docket entries.

## BACKGROUND

Elexco "is a full service land company, which includes a Seismic Support Services Group". Elexco's Memorandum of Law [43-1], p.1. On October 1, 2007, Hennig and Elexco entered into the Agreement [41-4] designating Hennig as Elexco's "Manager, Seismic Support". Id., ¶1. In that capacity, Hennig "managed seismic support projects for Elexco's clients including permitting services [and] ground motion monitoring services." Hennig's Statement of Facts [41-1], ¶4; Elexco's Counter-Statement of Material Facts [43-4], ¶4.

In addition to seismic support services, Elexco offers various other services, including land consulting services, renewable energy services, mapping services, title services and legal services, but Hennig had no involvement in these other areas of Elexco's business. Hennig's Statement of Facts [41-1], ¶¶5-6; Elexco's Counter-Statement of Material Facts [43-4], ¶5-6.

In pertinent part, the Agreement states:

> "7.    NON-COMPETING BY EMPLOYEE
> Employee hereby agrees that employee will not, during the term of his employment, or for a period of eighteen (18) months after the termination thereof, engage directly or indirectly in a business similar to Employer's business, nor associate therewith in such related business capacity either as an individual or a member of a firm or a shareholder. Employee further agrees that employee will not, during the term of his employment, or for a period of eighteen (18) months after the termination thereof, directly or indirectly, 1) induce any customers of Employer to patronize any similar business which competes with Employer; 2) canvas, solicit or accept any similar business from any customer of the Employer; 3) directly or indirectly request or advise any customers of the Employer to withdraw, curtail or cancel their business or services with Employer; or [sic] 4) directly or indirectly disclose to any person or corporation the name or addresses of any of the customers of Employer; 5) attempt to induce, or induce, any

existing or former customers of the Employer to take any existing or future business from the Employer to the employee or any other third party or entity.

**8.     INJUNCTIVE RELIEF**

… In the event of a breach of any provision herein, the Employer shall be entitled, in addition to injunctive relief provided for herein, attorney's fees and liquidated damages in the sum of $25,000.00 per breach.

**9.     SEVERABLE PROVISIONS**

In the event that any of the provisions of this agreement shall be held to be invalid or unenforceable, the remaining provisions thereof shall be valid and enforceable as though the invalid or unenforceable parts had not been included therein.  In the event that any provision of this agreement shall be declared by a court of competent jurisdiction to exceed the maximum restrictiveness such court deems reasonable and enforceable, the provisions deemed reasonable and enforceable by the court shall be made enforceable to the fullest extent deemed reasonable by such court".

According to John Norman, Elexco's founder and CEO, "[a]t no time did Hennig ever question [the] non-competition clause . . . or suggest that he did not understand its meaning. And, despite the opportunity to do so, Hennig also never asked that the clause be deleted . . . or modified in any way." Norman Affidavit [43-2], ¶18. Hennig admits that he "did not pay much attention to the non-compete and liquidated damages clauses" at the time he signed the Agreement. Hennig Affidavit [55-2], ¶13.

On September 13, 2009, Hennig gave Elexco 60 days' notice of his intention to resign from the company, effective November 14, 2009. Norman Affidavit [43-2], ¶¶37, 39. During that 60-day period (*before* leaving Elexco), Hennig told Norman that "he had reviewed the Agreement with an attorney and had been told it was unenforceable". Id., ¶40. Although

Elexco alleges that "Hennig terminated his employment under false pretenses and almost immediately thereafter started a competing company . . . performing seismic support services in the very same geographic areas he work in for Elexco" (Elexco's Memorandum of Law [43-1], p.1), it took no steps to enforce the Agreement for 15 months, until commencing this action on February 14, 2011.

In support of his motion for partial summary judgment, Hennig argues that the Agreement's non-compete and liquidated damages clauses "are so ambiguous that there cannot have been a meeting of the minds on this term of the contract, which altogether precludes enforcement of the clause[s]." Hennig's Memorandum of Law [41-7], p.1. In the alternative, he argues that "the restrictive covenant is unreasonable geographically and in its scope of prohibited activity, thereby amounting to an unfair restraint on competition which renders it unenforceable as a matter of law." Id.

In cross-moving for partial summary judgment, Elexco argues that the non-compete and liquidated damages provisions are both unambiguous and reasonable in scope. Elexco's Memorandum of Law [43-1], Points II, IV, V. In the alternative, it suggests that if the covenant not to compete is found to be unreasonable in scope, it can be redrawn (or "blue penciled") by the court. Id., Point III.

ANALYSIS

A.     Is the Agreement Not to Compete Enforceable as Written?

Section 12 of the Agreement states that it "shall be construed in accordance with and governed for all purposes by the laws of the State of New York". New York courts have long recognized that "[s]ince there are powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood, restrictive covenants which tend to prevent an employee from pursuing a similar vocation after termination of employment are disfavored by the law. Such covenants will be enforced only if reasonably limited temporally and geographically. Columbia Ribbon & Carbon Mfg. Co., Inc. v. A-1-A Corp., 42 N.Y.2d 496, 499 (1977).

"The modern, prevailing common-law standard of reasonableness for employee agreements not to compete applies a three-pronged test. A restraint is reasonable only if it: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public". BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (1999) (emphasis in original). "A violation of any prong renders the covenant invalid." Id. at 389.

Elexco argues that it has "a legitimate interest in enforcement of the Covenant specifically tied to the geographic area where Elexco conducted seismic support for its clients". Elexco's Memorandum of Law [43-1], p.11. However, the non-competition covenant which it drafted far exceeds the scope of that legitimate interest. Although Elexco claims that "the Agreement is limited by its terms only to Elexco's Seismic Support clients, not to the entire

seismic support services industry world-wide" (id.), the Agreement as written contains no such limitations. While Elexco suggests that the Agreement "was intended only to restrict Hennig's activities in so far as they related to the types of services he provided to Elexco's seismic support clients and in the geographic areas where Elexco's Seismic Group worked." (id., p.24), the record does not indicate that this intent was ever communicated to Hennig, even after he advised Elexco (*before* leaving the company) that he considered the Agreement to be unenforceable.[2]

"Uncommunicated subjective intent alone cannot create an issue of fact where otherwise there is none." Wells v. Shearson Lehman/American Express, Inc., 72 N.Y.2d 11, 24 (1988). "[W]e concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote". Rodolitz v. Neptune Paper Products, Inc., 22 N.Y.2d 383, 386-87 (1968). Regardless of what Elexco may have intended, what it wrote was that Hennig "will not . . . engage directly or indirectly in a business similar to [Elexco's] business" or "accept *any* similar business from *any* customer of [Elexco]" [41-4, §7 (emphasis added)]. The word "business" means "a commercial enterprise carried on for profit" (Black's Law Dictionary (9th ed.),[3] and the word "'any' means 'all' or 'every' and imports no limitation." Zion v Kurtz, 50 N.Y.2d 92, 104 (1980). It is undisputed that Elexco's business was not limited to seismic support, and that "Hennig had no involvement in . . . other areas of [its] business".

---

[2] According to Elexco, the parties' "discussions primarily concerned the stock options and the time period Hennig would be required to stay with Elexco in order to be eligible for them". Norman Affidavit [43-2], ¶25.

[3] "[I]t is common practice for the courts of New York State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." Federal Insurance Co. v. American Home Assurance Co., 639 F.3d 557, 567 (2d Cir. 2011).

Hennig's Statement of Facts [41-1], ¶¶5-6; Elexco's Counter-Statement of Material Facts [43-4], ¶5-6.

The interpretation which Elexco now urges would "strain[ ] the contract language beyond its reasonable and ordinary meaning". <u>Bethlehem Steel Co. v. Turner Construction Co.</u>, 2 N.Y.2d 456, 459 (1957). That interpretation (limiting "business" to "seismic support business") "would effectively require the Court to write into the Contract a provision that was not there when the Contract was drafted." <u>AM Medica Communications Group v. Kilgallen</u>, 261 F.Supp.2d 258, 263 (S.D.N.Y.), <u>aff'd</u>, 90 Fed.Appx. 10 (2d Cir. 2003). "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." <u>Morlee Sales Corp. v. Manufacturers Trust Co.</u>, 9 N.Y.2d 16, 19 (1961).

As written, therefore, the Agreement's prohibition on Hennig's activities is clearly broader than necessary to protect Elexco's legitimate business interests. *See* <u>BDO Seidman</u>, 93 N.Y.2d at 392 ("a number of State courts have invalidated restrictive covenant agreements prohibiting employees from providing post-employment accounting services to any client of the employer without regard to whether the employee served the client during the course of employment"); <u>Bijan Designer for Men, Inc. v. Katzman</u>, 1997 WL 65717, *6 n.9 (S.D.N.Y. 1997) ("Bijan's motion seeks to enjoin Katzman from engaging in any contact with Bijan's customers. This relief, if granted, would prevent Katzman from doing business with these customers even if they sought his services without solicitation on his part. Indeed, it would require Katzman to actively avoid such customers. Such an injunction would operate in a harsh and oppressive manner, and thus would be void as against public policy").

B.       Should the Agreement Be "Blue-Penciled" to Make It Enforceable?

In the alternative, Elexco suggests that "if found to be unreasonable, the covenant should be 'blue-penciled'" to a more reasonable scope. Elexco's Memorandum of Law [43-1], p.13. "The prevailing, modern view rejects a per se rule that invalidates entirely any overbroad employee agreement not to compete. Instead, when . . . the unenforceable portion is not an essential part of the agreed exchange, a court should conduct a case specific analysis, focusing on the conduct of the employer in imposing the terms of the agreement . . . . Under this approach, if the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing, partial enforcement may be justified". BDO Seidman, 93 N.Y.2d at 394.

However, Elexco has failed to demonstrate either "an absence of overreaching" or that it "has in good faith sought to protect a legitimate business interest". In BDO Seidman, the Court found it significant that "no proof was submitted that BDO imposed the covenant in bad faith, knowing full well that it was overbroad. Indeed, as already discussed, the existence of our . . . precedents, and decisions in other States upholding the full terms of this type of agreement, support the contrary conclusion". 93 N.Y.2d at 395. Here, by contrast, numerous precedents (including BDO Seidman itself) should have made clear to Elexco that the language of the Agreement was far broader than necessary to protect its legitimate business interests.

Furthermore, Hennig told Elexco - *before* leaving his employment - that his attorney considered the Agreement as written to be unenforceable. Had Elexco been acting in good faith to protect a legitimate business interest, it would have attempted to narrow the scope of the Agreement at *that* time, either by further negotiation with Hennig or by asking a court to "blue pencil" the document before Hennig began to compete. Elexco did neither - instead, it merely "reminded him of the terms of his Agreement, specifically the non-competition clause, and . . . provide[d] him with a copy of the executed Agreement" (Norman Affidavit [34-2], ¶42) - and then waited 15 months before seeking judicial relief.

Whether to "blue pencil" an overbroad clause is a matter committed to the court's equitable discretion. *See* AM Medica, 261 F.Supp.2d at 263 ("AMM suggested at the Hearing that if the Court found the Contract's covenants too restrictive, it could exercise its equitable powers to 'blue pencil' the applicable provisions . . . . However, the Court declines to exercise such discretion"). "[A] court of equity . . . stringently demands good faith, fairness, and uprightness from the litigant parties who come before it either as plaintiffs or defendants." Fogel v. Bolet, 194 Misc. 1019, 1024 (Sup. Ct. N.Y. Co.1949). Moreover, "equity aids the vigilant and not those who slumber on their rights". State of Kansas v. State of Colorado, 514 U.S. 673, 687 (1995); 55 N.Y.Jur.2d, Equity §98.

Since Elexco has demonstrated neither good faith nor diligence in seeking to protect a legitimate business interest, I conclude that "blue penciling" of the Agreement would not be a proper exercise of this court's discretion.

Finally, I am unpersuaded by Elexco's resort to §9 of the Agreement, which provides that "[i]n the event that any provision of this agreement shall be declared by a court . . .

-9-

to exceed the maximum restrictiveness such court deems reasonable and enforceable, *the provisions deemed reasonable and enforceable* by the court shall be made enforceable to the fullest extent deemed reasonable by such court" (emphasis added). *See* Elexco's Memorandum of Law [43-1], p.15. Since I do not deem any of the contested provisions[4] of the Agreement to be "reasonable and enforceable", this provision is inapplicable.

### C. Must the Liquidated Damages Clause be Stricken?

Section 8 of the Agreement states that "[i]n the event of a breach of any provision herein, the Employer shall be entitled . . . [to] liquidated damages in the sum of $25,000.00 per breach". Hennig argues that the this phrase "is so ambiguous that there cannot have been a meeting of the minds on this term of the contract". Hennig's Memorandum of Law [41-7], p.10.

I disagree. The word "breach" has a common and well-understood meaning: *see* Black's Law Dictionary (9th ed.) (defining "breach of contract" as the "violation of a contractual obligation by failing to perform one's own promise"); 22A N.Y.Jur.2d, Contracts §429 ("A failure to comply with the provisions of a contract . . . constitutes a breach"). The clause is triggered by "a breach of *any* provision herein" (emphasis added) - and as previously noted, "'any' means 'all' or 'every' and imports no limitation." Zion, 50 N.Y.2d at 104.

Therefore, the liquidated damages clause is not ambiguous. Whether it is enforceable is a different question. "Liquidated damages provisions . . . are valid if the damages flowing from a breach are difficult to ascertain and under a provision fixing the damages in

---

[4] Because Hennig does not contest the 18-month term of the covenant not to compete (*see* Hennig's Reply [55], p.11), the validity of that term is not at issue.

advance the amount is a reasonable measure of the anticipated probable harm . . . . On the other hand, if the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced". BDO Seidman, 93 N.Y.2d at 396.

Hennig suggests that "[i]f the clauses are to be enforced as written, then, Elexco will have the burden of proving that the $25,000 amount is a reasonable measure of anticipated probable harm, rather than just a number plucked from thin air". Hennig's Memorandum of Law [41-7], p.10.  I disagree: it is not Elexco's burden to proves that the clause is valid - it is Hennig's burden to prove that it is not. "The burden is on the party seeking to avoid liquidated damages . . . to show that the stated liquidated damages are, in fact, a penalty." JMD Holding Corp. v. Congress Financial Corp., 4 N.Y.3d 373, 379 (2005).

However, the question of whether the liquidated damages clause is a "reasonable measure of the anticipated probable harm" (BDO Seidman, 93 N.Y.2d at 396) or an unenforceable penalty cannot be determined in the abstract; it will not be ripe for determination unless and until Elexco seeks to recover liquidated damages for a particular breach of the Agreement.

## CONCLUSION

For these reasons, I recommend that Hennig's motion for partial summary judgment [41] be granted to the extent it seeks to declare the covenant not to compete contained

in §7 of the Agreement to be unenforceable,[5] but that it otherwise be denied, and that Elexco's cross-motion for partial summary judgment [43] be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by January 17, 2012 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and

---

[5] Although Hennig's motion for summary judgment [41] seeks dismissal of Elexco's breach of contract cause of action, I do not recommend dismissal of that claim in its entirety at this time. In addition to alleging that Hennig has breached the non-competition covenant contained in §7 of the Agreement, Elexco's alleges that "[d]efendants have engaged in additional activity(ies) that constitutes further breaches of Hennig's Agreement with Elexco" (Amended Complaint [17], ¶38), and Hennig has not addressed this allegation. For example, Hennig's obligation not to disclose or utilize Elexco's confidential information (Agreement, §6) is not at issue in these motions.

explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: December 28, 2011

                                                       /s/ Jeremiah J. McCarthy  
                                                       JEREMIAH J. MCCARTHY  
                                                       United States Magistrate Judge